IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STANLEY BOATRIGHT and　　　　　　　:
NORMA BOATRIGHT
　　　　　　Plaintiffs,

　　　　　　　　　　　　　　　　:

　　v.　　　　　　　　　　　　　　　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　　NO. 14-7041

　　　　　　　　　　　　　　　　:

CROZER-KEYSTONE HEALTH SYSTEM;
CROZER CHESTER MEDICAL CENTER;
SHERRI EICHHOLZ; and,　　　　　　:
CHRISTINA KRASOWSKI
　　　　　　Defendants.

## MEMORANDUM

**Jones, II　J.**　　　　　　　　　　　　　　　　　　　　　**July 23, 2015**

### I.　INTRODUCTION

Plaintiffs Stanley and Norma Boatright (husband and wife) bring the instant action against Defendants Crozer-Keystone Health System, member Crozer Chester Medical Center, and two of the center's employees for negligent unlawful disclosure of private medical information. Plaintiffs allege Mr. Boatright was suspended from and demoted in his employment as a result of this disclosure and are therefore seeking compensatory and punitive damages for same. Defendants' have filed a Partial Motion to Dismiss and Motion to Strike pertaining to the issues of: (1) whether Plaintiffs' pleadings allege adequate facts to warrant an inference of outrageous conduct sufficient to support demands for punitive damages; and, (2) whether a past administrative investigation conducted by the Department of Health and Human Services, Office of Civil Rights, is sufficiently irrelevant or immaterial to justify striking all mention of it from the pleadings.

1

For the reasons set forth hereinbelow, Defendants' Motion shall be denied.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Stanley and Norma Boatright reside in the Township of Woolwich, New Jersey, where Mr. Boatright was employed by the New Jersey Police Department during the events in question. (Second Am. Compl. ¶¶ 5-6, 18) (hereinafter "SAC"). On December 27, 2012, Mr. Boatright was involved in a motor vehicle accident, after which emergency personnel transported him to Crozer Chester Medical Center in Delaware County, Pennsylvania, where he was admitted as a patient. (SAC ¶¶ 8, 11-12.) At the time of Mr. Boatright's admission, Defendant Christina Krasowksi, Director of Crozer's Emergency Department, and Defendant Sherri Eichholz, an emergency room nurse, were working in the emergency room for Defendant Crozer Chester Medical Center as registered nurses licensed in the Commonwealth of Pennsylvania. (SAC ¶¶ 13-16.) Defendant Eichholz was assigned to care for Mr. Boatright at the time of his admission as a patient. (SAC ¶ 17.)

Shortly after Mr. Boatright was admitted, Defendant Krasowski contacted Mr. Boatright's superior officers at the police station—Chief James Schmidt and Captain Robert Leash—either or both of whom had a prior relationship with Defendant Krasowski as either friends or neighbors. (SAC ¶¶ 18-19.) Without Mr. Boatright's knowledge or consent, Defendant Krasowski disclosed Mr. Boatright's private medical information to his superior officers, who immediately came to the emergency room, at least partially due to Director Krasowski's communication. (SAC ¶¶ 19-20.)  Upon their arrival, Defendant Krasowski and/or Eichholz gave Chief Schmidt and Captain Leash access to Mr. Boatright's treatment room and protected health information, again without Mr. Boatright's permission and despite neither officer being on duty or assigned to investigate the accident. (SAC ¶¶ 20-22.) Director Krasowski also provided

2

confidential medical information about Mr. Boatright's condition, specifically disclosing his protected health information to Chief Schmidt, Captain Leash, and one other police officer. (SAC ¶¶ 23-24.) No hospital staff member attempted to verify the identity or position of Chief Schmidt or Captain Leash, nor was any official document, such as a warrant or subpoena, presented prior to the disclosure of Mr. Boatright's protected medical information. (SAC ¶¶ 26-27.) At no time during the events in question did Mr. Boatright ever consent to the release of any of his private medical information. (SAC ¶ 25.)   Subsequent to this incident, Mr. Boatright filed a complaint with the U.S. Department of Health and Human Services, Office for Civil Rights ("OCR"), alleging the unlawful disclosure of his protected health information to his employer. (SAC ¶ 29.)  The OCR's investigation concluded that Defendants Eichholz and Krasowski impermissibly disclosed Mr. Boatright's protected health information to his employer. (SAC ¶ 30.)

Plaintiffs allege that Chief Schmidt and Captain Leash "encouraged, pursued, and subjected" Mr. Boatright to disciplinary proceedings on the basis of the information disclosed by Defendants, resulting in Mr. Boatright's demotion and suspension from employment.  (SAC ¶ 31.) Accordingly, Plaintiffs commenced the instant action against Defendants Crozer-Keystone Health System (the not-for-profit health system comprising five hospitals, including the one at which the events in question occurred), Crozer Chester Medical Center, Sherri Eichholz, and Christina Krasowski, for several claims arising from the alleged unlawful disclosures. (First Am. Compl., ECF No. 9.)  Plaintiffs subsequently amended these claims, narrowing them to negligence involving respondeat superior, training and supervision, and public disclosure of protected health information. (SAC ¶¶ 40-41, 45-47, 54.) In addition to compensatory damages for lost income, harm to reputation, emotional distress, and loss of consortium, Plaintiffs seek

3

punitive damages for Defendants' "malicious, outrageous, oppressive[,] willful, wanton and/or reckless" conduct. (SAC ¶¶ 31, 33-34, 42, 49, 56.)

### III.   DISCUSSION

#### A.   Partial Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

Defendants seek dismissal of Plaintiffs' punitive damages claims.  Under Pennsylvania law, "[p]unitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instances in which they are justified, are subject to strict judicial controls." *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096-98 (Pa. 1985) (*abrogated on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (Pa. 1989)). Pennsylvania has adopted the

Restatement of Torts with regards to punitive damages. *Estate of Lemington for the Aged v. Baldwin*, 777 F.3d 620, 631 (3d Cir. 2015); *see also McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. 1987); *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963).

Section 908 of the Restatement provides in pertinent part:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts § 908(2).

Additionally, Section 909 provides:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> > (a)  the principal or a managerial agent authorized the doing and the manner of the act, or
> >
> > (b)  the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> >
> > (c)  the agent was employed in a managerial capacity and was acting in the scope of employment, or
> >
> > (d)  the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909. *See also Chuy v. Phila. Eagles Football Club,* 595 F.2d 1265, 1278 (3d Cir. 1979) (assessing the propriety of Section 909 and rejecting argument that "punitive damages should not be assessed against a principal who does not participate in or approve the tortious conduct of his agent.").

Pennsylvania case law defines "outrageous conduct" as conduct that rises to the level of "malicious, wanton, reckless, willful, or oppressive." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (citing *Chambers*, 192 A.2d at 358). "In deciding whether punitive damages should be

5

assessed, the nature of the tortfeasor's act itself, together with his motive, the relationship between the parties and all other attendant circumstances should be taken into account." *Martin*, 494 A.2d at 1096 (citing *Feld*, 485 A.2d at 748). Conduct that constitutes a mere "error in judgment" or even gross negligence does not rise to a level of culpability sufficient to warrant an award of punitive damages. *Martin*, 494 A.2d at 1097.

Plaintiffs herein seek punitive damages against all Defendants on the basis of Negligent Public Disclosure of Protected Health Information, and against Defendant Crozer-Keystone Health System individually on the bases of Respondeat Superior and Negligent Training and Supervision. In support of their claims for punitive damages against Defendant Crozer-Keystone, Plaintiffs allege in pertinent part that said Defendant:

- "[K]new or had reason to know that releasing Plaintiff's private health information without authorization to Plaintiff's employer in breach of their statutory and professional duty to Plaintiff would create an unreasonable risk of harm to Plaintiff and did so with reckless disregard to that risk and to Plaintiff's rights." (SAC ¶ 32);

- Breached its statutory and common law duties of confidentiality and privacy to Plaintiff "by and through its employees," who did so "in the course and scope of their employment . . ." (SAC ¶¶ 39-40);

- "[O]wes a duty to its patients to properly train its medical staff, such as nurses, including training and instruction in the permissible disclosure of patient health information to law enforcement officials in the absence of the individual's authorization" and breached this duty "in the training and instruction of its employees, Defendants Eichholz and Krasowski, in the protection of patient privacy and confidentiality, as well as training and instruction in the permissible disclosure of patient health information to law enforcement officials in the absence of the individual's authorization." (SAC ¶¶ 44-45);

- "[B]reached its duty to its patients to properly supervise its medical staff in the performance of their job duties and responsibilities" (SAC ¶ 46); and,

- "[B]reached its duty to Plaintiff in the supervision of Defendants Eichholz and Krasowski" (SAC ¶ 47).

6

As a result of these allegations, Plaintiffs maintain that Defendant Crozer-Keystone's "conduct was malicious, outrageous, oppressive, willful, wanton and/or reckless . . ." (SAC ¶¶ 42, 49).[1]

Notably, in arguing Plaintiffs have failed to sufficiently state any claim that would support punitive damages, Defendants briefing is devoid of any reference to the aforementioned allegations but instead, focuses on Plaintiffs' use of the language "malicious, outrageous, oppressive, willful, wanton and/or reckless." In any event, Plaintiffs' allegations against Defendant Crozer-Keystone—when read in context— are sufficient to withstand dismissal at this early stage of the proceedings. *See Deritis v. Mc Garrigle,* Civ. No. 13-6212, 2014 U.S. Dist. LEXIS 86910, at \*28-29 (E.D. Pa. June 24, 2014) (denying motion to dismiss punitive damages claim because it was "premature" and holding that "[i]f discovery shows that [Plaintiff] is unable to prove the malice, willfulness, or recklessness required to support a claim for punitive damages, the Court will entertain another request to dismiss the request."); *Madison v. Bethanna, Inc.*, Civ. No. 12-1330, 2012 U.S. Dist. LEXIS 71738, at \*43 (E.D. Pa. May 23, 2012) (allowing demand for punitive damages to go forward, finding "[w]hile the evidence unearthed during discovery may ultimately lead to a different conclusion, if [the] allegations set forth in Plaintiffs' Complaint] are ultimately determined to be true, they could support a claim of recklessness. As such, Plaintiffs' allegations at this stage of the proceedings survive dismissal.")

---

[1] This Court notes that although Count III of Plaintiffs' Second Amended Complaint is labeled "Negligence, Public Disclosure of Protected Health Information Against All Defendants," said Count specifically speaks to the particular involvement of every Defendant except Crozer-Keystone with regard to the alleged breach. However, because: (1) the pleading incorporates by reference all preceding paragraphs; (2) Paragraph 54 of Count III reaffirms the breach as being attributed to all "Defendants"; and (3) Defendants have not explicitly addressed the issue in their Motion, said claim shall proceed at this time.

7

This Court cannot preclude the possibility that when provided an opportunity for discovery, evidence of the allegations as set forth above could potentially demonstrate conduct by Defendant Crozer-Keystone to support the imposition of punitive damages.[2]

Defendants' request to dismiss the remaining punitive damages clams shall similarly be denied. Defendants ask this Court to presume that Mr. Boatright's supervisors showed up out of concern for Mr. Boatright's condition. (Defs.' Br. 6.) However, Defendants are not entitled to any such presumption for purposes of assessing the instant Motion. Instead, accepting all factual allegations as true and construing Plaintiffs' Second Amended Complaint in a light most favorable to Plaintiffs, Defendant Krasowski contacted Mr. Boatright's supervising officers on the basis of a personal relationship she had with one or both of them. (SAC ¶¶ 18-19.) They, in turn, showed up to the hospital as a result of this unlawful disclosure, where Director Krasowski and Nurse Eichholz volunteered additional confidential medical information regarding Mr. Boatright's condition without his consent. (SAC ¶¶ 19-22, 25). Again, at this early stage of the proceedings, these facts are sufficient to support an inference of reckless disregard for the rights of Mr. Boatright, or possibly even wanton or intentional conduct. The alleged actions of Director Krasowski and Nurse Eichholz may well turn out to be "errors in judgment," arising, perhaps, out of concern for Mr. Boatright or misperceptions regarding the authority of law enforcement officers to access such records. However, their conduct could also plausibly be shown to have been more culpable, if, for instance, they knew the impropriety of their actions and the possible effects those actions would have on Plaintiffs, yet nonetheless chose to go through with them, recklessly and wantonly disregarding the rights of Mr. Boatright, or even intentionally violating them. Because the pleadings alone could reasonably permit the latter

---

[2]  *See Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (finding negligent supervision can be a basis for imposition of punitive damages).

inference, the motion to dismiss Plaintiffs' remaining demands for punitive damages shall be denied.[3]

## B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of motions to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D.Pa.2002) (citing *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002)). Though district courts enjoy wide discretion in choosing whether to grant motions to strike, such motions are generally disfavored. *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994). Granting a motion to strike is considered "a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* (quoting *United States v. Consolidation Coal Co.*, Civ. No. 89-2124, 1991 U.S. Dist. LEXIS 15229, at *4 (W.D. Pa. July 5, 1991)) (internal quotation marks omitted). Reluctance to grant 12(f) motions arises due to concern over dismissing pleadings before the parties have had a full chance to develop the factual record. *Cipollone v. Liggett Grp., Inc.,* 789 F.2d 181, 188 (3d Cir. 1986). In order to prevail on a motion to strike, the moving party must show that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428-29 (E.D. Pa. 2007) (quoting *River Road Development Corp. v. Carlson Corporation-Northeast*, Civ. No. 89-7037, 1990 U.S. Dist. LEXIS 6201, at *7 (E.D. Pa. May 23, 1990)) (internal

---

[3]  In moving for dismissal of Plaintiffs' demands for punitive damages, Defendants do not specifically reference Defendant Crozer Chester Medical Center and only reference Defendant Crozer-Keystone in a global sense, by seeking dismissal of the punitives demand set forth in Counts I and II of Plaintiffs' Second Amended Complaint, which Plaintiffs direct solely towards Defendant Crozer-Keystone.

quotation marks omitted). Motions to strike are evaluated "on the basis of the pleadings alone." *N. Penn Transfer*, 859 F. Supp. at 159 (quoting *Total Containment, Inc. v. Environ Products, Inc.*, Civ. No. 91-7911, 1992 U.S. Dist. LEXIS 12629, at *3 (E.D. Pa. Aug. 19, 1992)) (internal quotation marks omitted).

Defendants' Motion to Strike portions of the pleadings that refer to the previous administrative hearing shall be denied because factual findings from the OCR's investigation could potentially be admissible at trial. As noted above, the granting of a motion to strike is considered an extreme measure, and said motions are sparingly granted because of courts' justified reluctance to discard issues before the parties have a chance to fully develop the factual record. *Cipollone*, 789 F.2d at 188. For this reason, district courts in the Third Circuit, along with other circuit courts, have employed a simple test to evaluate whether allegations in a pleading are "impertinent" or "immaterial" for purposes of a 12(f) motion: "the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Conklin v. Anthou*, Civ. No. 10-2501, 2011 U.S. Dist. LEXIS 37055, at *4 (M.D. Pa. Apr. 5, 2011) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)) (internal quotation marks omitted); *see also*, *AT&T Corp. v. Public Serv. Enters.*, Civ. No. Civ. 99-4975, 2000 U.S. Dist. LEXIS 1578, at *6-7 (E.D. Pa. Feb. 16, 2000) (refusing to grant a motion to strike because "[t]he Court cannot conclude that [the plaintiff] will be unable to prove at trial that the individual defendants undertook the actions described in the Complaint without resort to inadmissible evidence.").

Here, Defendants' Motion to Strike relies primarily on the assertion that "these allegations amount to immaterial and impertinent matters."[4] (Defs.' Mot. ¶ 11.) Thus, the question for this Court becomes whether the OCR's investigation *could* be admissible at trial.

Federal Rule of Evidence 803 provides in pertinent part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (8) Public records. A record or statement of a public office if:
>
> > (A) it sets out:
> >
> > > (iii) *in a civil case* or against the government in a criminal case, *factual findings from a legally authorized investigation*; and
> > >
> > > (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed.R.Evid. 803(8)(A)(iii)-(B) (emphasis added).

This rule was created to allow for a presumption that government records are accurate. *Coleman v. Home Depot*, 306 F. 3d 1333, 1341 (3d Cir. 2002).[5] Defendants herein do not contest the trustworthiness of the investigation at issue. However, before evidence of this investigation could be admitted at trial "a cost/benefit analysis" would have to be conducted to determine whether said admission might cause too many complications, despite the relevance of

---

[4] Defendants also assert that their Motion to Strike should be granted because judicially unreviewed administrative findings are not given preclusive effect in federal court. (Defs.' Mot. ¶ 11) (citing *Roth v. Koppers Industries, Inc.*, 993 F.2d 1058 (3d Cir. 1993)). However, Plaintiffs do not allege that the administrative investigation is entitled to any sort of preclusive effect and the investigation need not be given preclusive effect to be considered as contestable evidence by the court. *See* Fed. R. Evid. 803(8)(A)(iii)-(B).
[5] Subsection (8) of Federal Rule of Evidence 803 has been amended since the court's ruling in *Coleman*. However, the changes made were for stylistic purposes only and did not alter the substance of the rule.

the investigation. *See Coleman*, 306 F. 3d at 1343 ("Evidence may be excluded if its probative value is not worth the problems that its admission may cause, *e.g.* unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.") (citing Fed. R. Evid. 403). Thus, if the probative value of evidence from a previous administrative investigation is "substantially outweighed" by the issues that would arise as a result of admitting it, the evidence may be found inadmissible. *Id.* at 1343-1344.

Applying these principles to the case at bar, Defendants' Motion to Strike must be denied because factual findings from the OCR's investigation *may* ultimately be deemed admissible at trial. [6] Accordingly, this Court shall withhold the "drastic remedy" of granting Defendants' Motion to Strike and allow the parties an opportunity to more fully develop the factual record.

---

[6] In support of their position on this issue, Defendants cite to cases from the Southern and Eastern Districts of New York, referring to them as "Fourth Circuit" authority. (Defs.' Br. 8.) This Court assumes Defendants intended to refer to same as "Second Circuit" authority. In any event, Defendants assert "that references to preliminary steps in…administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." (Defs.' Br. 8.) (citing *Platinum and Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 588, 594 (S.D.N.Y. 2011); *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005)). Even if the Third Circuit followed this approach, each of the cases cited by Defendants refer to settlement agreements arising from administrative actions, rather than the findings of a full-blown administrative investigation, the type of which was allegedly conducted in the present case. *See Platinum and Palladium Commodities Litig.*, 828 F. Supp. 2d at 594 (striking pleadings referring to a consent order arising from administrative action); *Gotlin v. Lederman*, 367 F. Supp. 2d at 363 (striking from the pleadings references to a settlement agreement resulting from administrative action). Moreover, Defendants concede that the Third Circuit leaves the admissibility of agency findings to the discretion of district courts in the EEOC context. (Defs.' Br. 8) (citing *Waters v. Genesis Health Ventures, Inc.*, Civ. No. 03-2909, 2005 U.S. Dist. LEXIS 311, at *6 (E.D. Pa. Jan. 10, 2005)). Defendants have therefore failed to demonstrate that the pleadings referring to the investigative findings of the OCR are immaterial or impertinent, as there is no showing that they would be inadmissible at trial.

12

## V.   CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion shall be denied in its entirety.

An appropriate Order follows.

BY THE COURT:

_____
C. Darnell Jones, II      J.